547 So.2d 1350 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Terry Donald RAY, Defendant-Appellant.
No. CR88-1388.
Court of Appeal of Louisiana, Third Circuit.
July 12, 1989.
*1351 David J. Williams, Lake Charles, for defendant-appellant.
*1352 Patricia Head, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, LABORDE and KING, JJ.
KING, Judge.
This appeal presents for review alleged errors committed during the defendant's trial when he was tried in absentia, and alleged errors in his sentencing.
Terry Donald Ray (hereinafter defendant) was charged with simple burglary of an inhabited dwelling in violation of La.R.S. 14:62. He was arraigned and pled not guilty. On November 5, 1986, he appeared with his attorney for trial and jury selection commenced. The defendant did not return to the courtroom when the trial resumed after the noon recess. Defendant's counsel moved, because of his client's absence, for a mistrial which the trial judge denied. Supervisory writs were taken to this court from the denial of the motion for a mistrial and we reversed the ruling of the trial court and ordered a mistrial. State v. Ray, an unreported decision bearing Number K86-1088 on the Docket of this Court dated November 4, 1986. The State then applied for supervisory writs to the Louisiana Supreme Court which reversed our ruling and reinstated the ruling of the trial court, reserving unto defendant the right to reurge his motion for a mistrial in the event of conviction. State v. Ray, 496 So.2d 338 (La.1986). The trial proceeded and the defendant was tried in absentia. The jury found the defendant guilty of the crime charged. Defendant was subsequently apprehended over a year and a half later. After being billed as an habitual offender, a sentencing hearing was held. The defendant was found to be an habitual offender and sentenced to serve nine years at hard labor with the first year of the sentence to be served without benefit of probation, parole, or suspension of sentence. Defendant appeals urging seven assignments of error. We affirm.

FACTS
On January 30, 1986, at approximately 11:30 A.M., Clara M. Jacobs noticed two men behaving suspiciously near the house of her cousin, Eva Mae Tezeno. Ms. Tezeno's home was located across the street and three doors away from her own house. Ms. Jacobs testified that the two men circled the house in a blue and white car as if they were "checking out" the place. She stated that the men parked the car in Ms. Tezeno's yard. She then saw the men get out of the car, walk to the kitchen window, and remove the air conditioning unit from the window. One of the men then entered the house through the window and opened the front door for the other man. The two men then removed a television set, a microwave, and a portable radio from the Tezeno house. After the men entered the house, Ms. Jacobs telephoned the police to report a break-in in progress. Although she could not see the men's faces, she gave a description of the car to the police. She also observed that one of the men was wearing jeans, a dark jacket and cap, while the other was wearing a red shirt.
When en route to the scene of the crime, Corporal Brian Brewton of the Lake Charles Police Department noticed the defendant and another man driving in a car in the area. The description of the car and the occupants matched the one given by Ms. Jacobs. Officer Brewton followed the men and then stopped them. He ordered the driver, Terry Donald Ray, out of the car and placed him in handcuffs. At this time, the passenger slid into the driver's seat and drove away in the car. A short time later the car was found abandoned with the other defendant, James Plumber, walking nearby. This defendant also matched the description given by Ms. Jacobs. The car was registered in the name of the defendant, James Plumber, who voluntarily consented to a search of the car. The items found in the search of the car were subsequently identified by Ms. Tezeno at trial as belonging to her. Ms. Tezeno also testified that she did not know the defendants and had not given them permission to enter her house. Ms. Jacobs testified and identified the car of defendant, James Plumber, as the blue and white car *1353 she saw earlier in the front of the Tezeno house.
Defendant and James Plumber were both jointly charged with the crime of simple burglary of an inhabited dwelling and were both represented by counsel. The trial commenced against both defendants with the selection of the jury. Defendant failed to return after the noon recess on the first day of trial. Defendant's counsel moved for a mistrial on behalf of his client and this motion was denied by the trial court. Defendant's counsel applied to this Court for supervisory writs which were granted and a mistrial was ordered. The State then applied for supervisory writs to the Louisiana Supreme Court which reversed the ruling of this court and reinstated the ruling of the trial court dening defendant's motion for a mistrial, but reserving to defendant the right to reurge the motion for mistrial in the event of a conviction. The trial then proceeded with defendant absent but with his counsel present. The co-defendant, James Plumber, and his counsel were also present. The jury convicted both defendants of the crime charged, with defendant being tried and convicted in absentia, but with his counsel present during the entire trial. After defendant's subsequent apprehension and sentencing he appeals alleging seven assignments of error.

LAW

ASSIGNMENT OF ERROR NUMBER I
Defendant contends by his first assignment of error that the trial court erred in failing to grant the motion for continuance filed by his attorney on the morning of the day of trial.
Defendant's court appointed attorney filed a written motion for a continuance on the morning of the day of trial claiming that he did not have adequate time to prepare his case since he could not contact defendant until three days before trial was scheduled to begin and was only able to first meet with defendant on the morning of trial.
The motion was permitted to be filed by the court and a contradictory hearing was held. The motion was denied. A timely filed motion may be granted in the court's discretion if there are good grounds for the motion. C.Cr.P. Art. 712. The denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice caused by the denial of the motion. Where a motion for a continuance is based upon the lack of time for counsel to prepare for trial a showing of specific prejudice has been disregarded only where the preparation time was so minimal as to call into question the basic fairness of the proceedings. State v. Jones, 395 So.2d 751 (La.1981). Only when the circumstances indicate that adequate time for preparation for trial was impractical has it been held that a motion for continuance should be granted. See State v. Benson, 368 So.2d 716 (La.1979); State v. Winston, 327 So.2d 380 (La.1976).
Defendant was free on bond during the time before trial and his attorney's access to him was not limited. Defendant had requested court appointed counsel, because of his indigency, and it was incumbent on him to make himself available and to co-operate with his court appointed attorney in preparing his defense for the trial. It is not appropriate for a continuance to be granted just because of defendant's inacessability to his attorney because, if such were the case, a continuance could always be necessitated by the conduct of a defendant. Defendant's own failure to make contact and to co-operate with his court appointed attorney was the cause for the minimal contact between the defendant and his attorney. Any prejudice claimed by defendant, which was caused by his own actions, is not sufficient to prove the defendant was prejudiced by the trial judge in denying the motion for continuance.
For this reason, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBER II AND V
Defendant contends by these two assignments of error that the trial court erred in not granting his counsel's motion for a mistrial when the defendant failed to *1354 return to the courtroom after the noon recess on the first day of trial and that the trial court erred in then permitting him to be tried and convicted in absentia. As these two assignments of error are interrelated they will be discussed together.
The defendant's presence at trial is a condition of due process only to the extent that a fair and just hearing would be thwarted by his absence. Thus, the defendant's presence is only essential at proceedings which have a reasonably substantial relation to the fullness of the opportunity of the defendant to defend against the charge. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934); State v. Kahey, 436 So.2d 475 (La.1983). Louisiana has chosen to codify this general rule and to establish the times when the defendant's presence is necessary at a criminal felony proceeding against him. LSA-C.Cr.P. Art. 831 provides:
"A defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself."
A codal exception to this article is set forth in LSA-C.Cr.P. Art. 832 which provides:
"A defendant charged with a felony not punishable by death cannot object to his temporary voluntary absence at the proceedings listed in Article 831 if his counsel was present. However, the defendant may always object to his absence at the arraignment or plea to the merits, provided the objection is made before the commencement of trial."
The State contends that LSA-C.Cr.P. Art. 832 should be applicable in the present case. It argues that because the defendant voluntarily absented himself from his trial after it had commenced, the State should not be required to halt the proceedings against him. Defendant argues that while his absence was voluntary it was not temporary but was intended to be permanent and for this reason La.C.Cr.P. Art. 832 should not be applicable. In State v. Behn, 445 So.2d 516 (La.App. 3 Cir.1984), the defendant escaped during the pendency of the trial, which continued in his absence with his counsel present. The defendant in that case made a similar argument as defendant now makes, which this court disposed of by saying:
"The defendant feels that this exception [La.C.Cr.P. Art. 832] should not be applicable to the instant situation. While he concedes the absence was voluntary, he contends it was not temporary. The basis for this contention appears to be based on the intent of the defendant. The defendant contends he did not intend for his escape to be temporary, and therefore, his absence should not fall within the exception of Article 832. However, as the State points out, this would allow the defendant to manipulate the judicial process.
In this case defendant's counsel was present at all proceedings in which the defendant chose to absent himself....
The defendant's voluntary removal of himself during the final phase of the proceedings was temporary and falls within the ambit of Article 832." State v. Behn, 445 So.2d 516, at page 519 (La. App. 3 Cir.1984).
Upon reading LSA-C.Cr.P. Arts. 831 and 832 in pari materia and in conjunction with a century of federal jurisprudence under the United States Constitution, we conclude that the provisions of La.C.Cr.P. Art. 832 are applicable in this case.
*1355 Almost a century ago, the United States Court of Appeals for the District of Columbia decided a case similar to this. In Falk v. United States, 15 App.D.C. 446 (1899), error dism., 180 U.S. 636, 21 S.Ct. 922, 45 L.Ed. 709 (1900), an accused appeared at the commencement of his trial, but then fled the proceedings before the trial was completed. The trial proceeded in absentia against the defendant and a guilty verdict was returned. In affirming the conviction, the appellate court said:
"It does not seem to us to be consonant with the dictates of common sense that an accused person * * * should be at liberty, whenever he pleased, * * * to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it. * * * This would be a travesty of justice which could not be tolerated. * * * [W]e do not think that any rule of law or constitutional principle leads us to any conclusion that would be so disastrous as well to the administration of justice as to the true interests of civil liberty.
* * * * * *
The question is one of broad public policy, whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries and turn them into a solemn farce, and ultimately compel society, for its own safety, to restrict the operation of the principle of personal liberty. Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." Falk v. United States, 15 App.D.C. 446 at pages 454, and 460 (1899).
See also, Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).
Thirteen years later, in Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), the United States Supreme Court discussed the basic right of a defendant to be present at all stages of trial, and concluded:
"* * * But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." 32 S.Ct. 250, at page 254.
The court further noted that if this principle did not apply, "there could be no conviction of any defendant unless he wished to be present at the time the verdict is rendered." 32 S.Ct. 250, at page 254.
In 1970, the United States Supreme Court in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), where the defendant was removed from the courtroom, because of his disruptive courtroom conduct, after the trial had commenced, stated that:
"There can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.
* * * * * *
To allow the disruptive activities of a defendant like respondent to prevent his trial is to allow him to profit from his own wrong. The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes." 90 S.Ct. 1057, at pages 1063-64.
In Taylor v. United States, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973), the Supreme Court found that the defendant, who left the trial after it had commenced, had waived his right of presence at trial and said:
"Petitioner, however, insists that his mere voluntary absence from his trial cannot be construed as an effective waiver, *1356 that is, `an intentional relinquishment or abandonment of a known right or privilege,' ... unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him.
Like the Court of Appeals, we cannot accept this position. Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence. The right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence. Consistent with Rule 43 and Diaz, we conclude that it was." (Footnote and citation omitted.) 94 S.Ct. 194, at pages 195-196.
Webster's Seventh New Collegiate Dictionary defines "temporary" as lasting for a time only and "voluntary" as proceeding from the will or from one's own choice or consent. The words "temporary voluntary absence" in La.C.Cr.P. Art. 832 mean, in our opinion, any absence from a trial after it has commenced which is caused by the will or choice of the defendant. In the instant case, we interpret the words "temporary voluntary absence" contained in LSA-C.Cr.P. Art. 832 in the same manner as "voluntary absence" has been interpreted in the federal jurisprudence. The public policy of enforcing Louisiana criminal law demands that the public interest be protected. This could not be accomplished if the courts and legal proceedings were subject to the will of defendants who could manipulate and frustrate the speedy trial and prosecution of criminal cases by absenting themselves from a trial which had already commenced whenever they chose to do so. Defendant had the full opportunity to be present at his trial, had he chosen to do so, to defend against the charge brought against him. Any loss of defendant's essential constitutional rights, so that he could not substantially have an opportunity to defend himself, was caused by defendant's own free will and choice.
It was never the intent of the legislature to provide defendants with the means to place a stranglehold on our system of justice. To interpret the words of La.C.C.P. Art. 832 "temporary voluntary absence" as defendant urges or in any other manner than we interpret them would mean that only in hindsight could the trial court determine if a mistrial should be granted. If a defendant, after a trial commenced, voluntarily absented himself, leaving his counsel to represent him, and did not ever return a mistrial would have to be granted at the end of the trial since his absence would not be of a temporary nature. However, a defendant who, after trial commenced, voluntarily absented himself, leaving his counsel to represent him, and returned only moments before the verdict was returned would not be entitled to a mistrial, since his absence would only be of a temporary nature. The former situation would permit a defendant by his own choice to manipulate a trial and to prevent the State from speedily prosecuting violations of the criminal laws of this State. The trial court would never know what action to take on a motion for a mistrial, after a trial had commenced, until the end of the trial. Sound judicial policy in the administration of our system of criminal justice dictates our interpretation of "temporary voluntary absence" in La.C.C.P. Art. 832 to mean any absence of a defendant from a criminal trial after it has commenced which is caused by the will or choice of the defendant.
For these reasons, we affirm the judgment of the trial court and hold that there was no error in its decision not to grant a mistrial on the basis of C.Cr.P. Art. 831 and to try the defendant in absentia after he voluntarily left his trial which had already commenced leaving his counsel to represent him. These assignments of error have no merit.

ASSIGNMENT OF ERROR NUMBER III
Defendant appeals his burglary conviction and sentence alleging seven assignments *1357 of error. Defendant failed to brief assignment of error number three and, therefore, this assignment of error is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).
Defendant's brief addressed an assignment of error designated as Assignment Of Error Number III, but the alleged error which was briefed was not included in the formal assignments of error filed with the trial court. An assignment of error first made in brief to the appellate court is not properly presented for review and cannot be considered on appeal. State v. Mayeux, 526 So.2d 1243 (La.App. 3 Cir. 1988), writ den., 531 So.2d 262 (La.1988).

ASSIGNMENT OF ERROR NUMBER IV
Defendant alleges that the State failed to prove beyond a reasonable doubt that the defendant committed the crime of simple burglary of an inhabited dwelling. Specifically, defendant asserts that the State failed to prove intent to commit a felony or theft because defendant thought his co-defendant had permission to enter the house.
The proper standard of review in determining the sufficiency of evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Marcotte, 471 So.2d 1189 (La.App. 3 Cir.1985). In order for the State to convict a person of simple burglary of an inhabited dwelling it must prove: (1) unauthorized entry of an inhabited dwelling; and (2) intent to commit a felony or theft. La.R.S. 14:62.2. The intent element provided for in this crime may be inferred from the facts and circumstances surrounding the commission of the offense. State v. Pike, 426 So.2d 1329 (La. 1983).
From the facts presented, a rational trier of fact could clearly infer that defendant had the necessary intent to commit the crime of which he was charged. There was a neighbor who witnessed the co-defendant enter the victim's house through a window and open the door to admit the defendant who entered the house. It is not normal to remove a window air conditioning unit to enter a house through a window. This eyewitness' testified that the defendant himself removed a television set, a microwave, and a portable radio from the victim's house. This witness subsequently telephoned the police, giving a description of the car and of the defendants. In a matter of minutes, defendant was stopped in a car matching the description of the eyewitness. Defendant was also wearing clothes which fit this same description of the man seen entering and removing property from the house. The stolen items were found in the car with the defendant and the victim later identified these items to be her property taken without her permission.
A review of the entire record of the trial of the defendant and the co-defendant, James Plumber, does not reveal any testimony or other evidence to support the allegation made by defendant that he thought the co-defendant had permission to enter the house of Ms. Tezeno. The only facts presented in the record were that Ms. Tezeno did not know either defendant and that they did not have permission to enter her house and remove her property. Considering the evidence in the light most favorable to the prosecution, the necessary elements of the crime and intent to commit a felony or theft could have been found by the jury, as a rational trier of fact, beyond a reasonable doubt. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER VI
Defendant contends that the trial judge erred in not granting his motion to sever the trial of the two defendants. The motion to sever was first made by the co-defendant, after defendant left the trial and the Louisiana Supreme Court had denied the motion for mistrial made by defendant's counsel. Defendant's counsel joined *1358 in the motion for severance made by the co-defendant.
Defendant claims that it was erroneous not to sever his trial from that of his co-defendant. Nowhere in brief does defendant state or argue that he was prejudiced by the denial of the motion to sever. He offered no evidence in the record and does not give any explanation in brief to this court for his contention that the trial judge erred in his decision. Defendant makes no argument on the issue and does not state how the trial judge abused his discretion in denying this motion to sever. An accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Webb, 424 So.2d 233 (La.1982). After reviewing the entire record we can find no abuse of discretion by the trial judge in denying defendant's motion for severance. For this reason, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER VII
Defendant next argues that the sentence imposed by the trial court is excessive. Specifically, defendant claims that the trial judge failed to advise him of his right to remain silent according to the habitual offender law and that the trial judge failed to follow the sentencing guidelines of C.Cr.P. Art. 894.1.
La.R.S. 15:529.1(D) of the Habitual Offender Statute provides that:
"If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state or of the United States; or any foreign government or country of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remain silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated." (Emphasis added.)
The Louisiana Supreme Court has discussed this statute and specififically enumerated the rights of which a defendant must be advised before the trial court can accept his plea at the habitual offender hearing by saying that:
"Before the defendant chooses to acknowledge or confess in open court that he has been previously convicted of a felony, the statute requires that he first be cautioned by the trial court as to his rights. R.S. 15:529.1(D) specifically provides that defendant be advised by the court of his right to a `formal hearing' and to have the state prove its case. State v. Martin, 427 So.2d 1182 (La. 1983). Further, this section implicitly provides that the defendant should be advised by the court, of his statutory right to remain silent." State v. Johnson, 432 So.2d 815, at page 817 (La.1983).
In this case, before the trial judge accepted the defendant's guilty plea as a habitual offender, he made the following statement to the defendant:

*1359 "All right. You understand that you are not required to admit to the other offenses, or offense, that you could have a hearing on them if you wanted, and if you needed time for that hearing, the Court would give you time to prepare for it. You understand that?"
Defendant acknowledged that he understood these rights. It is clear that defendant was adequately cautioned in language that he could understand about his right to remain silent and to have the State prove at a court hearing his identity as an habitual offender.
Defendant also contends that the trial judge failed to comply with the sentencing guidelines of La.C.Cr.P. Art. 894.1.
La.C.Cr.P. Art. 894.1 provides criteria for the court to follow in imposing sentence and mandates that the court state for the record the considerations taken into account and the factual basis for its conclusions in imposing sentence to insure that each sentence is individualized to the offender and the offense. State v. McDonald, 414 So.2d 735 (La.1982). Even though the sentencing court need not articulate every aggravating and mitigating circumstance contained in Art. 894.1, the record must reflect that adequate consideration was given to these guidelines in particularizing defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
In this case the record shows that the trial judge considered defendant's past criminal record; that being a felony burglary conviction and nine previous adjudications as delinquent in juvenile court. The trial judge also considered the fact that defendant fled the trial proceedings for which he was convicted and was presently being sentenced. The trial judge considered the defendant's explanation of his actions and the reformatory attitude he had allegedly maintained during the period of his absence. The trial court also considered the testimony of defendant's father on his behalf. The record shows that the trial judge did adequately consider and apply the sentencing guidelines in sentencing defendant. For this reason, this assignment of error is without merit.
For these reasons we affirm the defendant's conviction and sentence.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns reasons.
LABORDE, J., dissents and assigns written reasons.
DOMENGEAUX, Judge, concurring.
I concur with the majority opinion, believing this defendant waived his right guaranteed by the Sixth and Fourteenth Amendments to be present throughout his trial. I note that Illinois v. Allen, supra, cited in the majority opinion, was authored by Supreme Court Justice William Brennan, who does not take lightly the Constitutional and other rights of persons running afoul of the law.
Terry Donald Ray failed to appear at his first scheduled trial for the instant offense. He was later arrested and cited for contempt. At his second trial, he failed to return after the noon recess, and, thereafter, he remained at large for one and one-half years. Through this illegal conduct, the defendant has demonstrated a deliberate attempt to manipulate and ultimately to thwart the judicial process. This cannot be condoned.
State v. Bindom, 460 So.2d 68 (La.App. 1st Cir.1984), suggests that such conduct should be handled through contempt citations and bond proceedings. However, the case sub judice illustrates the inadequacies of these remedies: Under contempt and bond forfeiture penalties, this defendant has already avoided two trials. The granting of a mistrial, and a resulting new trial, would give him a third opportunity to flee. How long can we permit this defendant to paralyze the judicial process?
There comes a time when the courts must realize that defendants can abuse their constitutional rights. When such an abuse occurs, as in this case, we should not sit idly by while our judicial system is trampled upon.
LABORDE, Judge, dissenting.
I do not agree that defendant's absence during the entire adversarial portion of the *1360 trial falls within the exception of LSA-C. Cr.P. Art. 832. Although the jurisprudence on the interpretation of this article is limited, Official Revision Comment (b) to this article provides some guidance on this issue. It states:
"(b) Rights of absent defendants, whose voluntary absence creates the problem, are fully protected by the stated limitations. The waiver is only effective if his attorney is present, and if the absence is of a temporary nature. Possibly the second limitation would apply even if it were not spelled out, for due process would require that the defendant should not be tried if he completely absents himself after the arraignment. Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The absences where a waiver has been recognized have been of fairly short duration." [Emphasis Theirs]
Clearly, for a waiver to be effective, defendant's counsel must be present and defendant's absence must be both voluntary and temporary.
The majority cites State v. Behn, 445 So.2d 516 (La.App. 3d Cir.1984), to support its argument that since the defendant left the courtroom voluntarily, the State should not have to halt the proceedings against him. However, in Behn, the defendant escaped from the courthouse holding cell after closing arguments and prior to the jury charges and verdict. In concluding that defendant's absence fell within the exception of LSA-C.Cr.P. Art. 832, this court stated:
"In this case defendant's counsel was present at all proceedings in which the defendant chose to absent himself. The charging of the jury was not adversarial in nature and did not require any input by the defendant. Also the defendant's further presence could hardly have altered the outcome of the trial."
Id. at 519.
The instant case is distinguishable from Behn. Unlike Behn, where defendant's absence was clearly temporary, the defendant in this case was not present during the adversarial portion of the trial, including the presentation of evidence and cross-examination of witnesses which might have required his input. Also, since Clara Jacobs testified out of the defendant's presence, there was no opportunity for an eyewitness identification of the defendant in court. In addition, defendant's counsel, who was only appointed to the case a little more than one month before trial, did not meet with defendant until the morning of the trial. Thus, under these circumstances, defendant's absence during the adversarial portion of the trial may have hindered his attorney's ability to effectively rebut the State's case.
A case more similar to the instant case is State v. Bindom, 460 So.2d 68 (La.App. 1 Cir.1984). In Bindom, the defendant failed to appear on the second day of his trial after being present the day before for jury selection. The First Circuit, relying on the fact that the defendant was absent during the adversarial portion of the trial and that defense counsel (who wasn't appointed until the trial) was inadequately prepared for trial, determined that defendant's absence did not fall within the scope of LSA-C. Cr.P. art. 832. Since defendant was neither present as required during the important stages of trial nor waived his presence, the court in Bindom found that the defendant's due process rights were violated by conducting a trial in his absence. In reaching this decision, the Bindom court stated: "Although defendant may have intentionally disrupted the orderly proceedings of the court, such actions could have been dealt with through contempt, bond forfeiture and bond setting procedures that would have resulted in severe sanctions. What cannot be done is a trial in absentia." [Emphasis Theirs] Id. at 70 n. 2.
Accordingly, under the facts of this case, where defendant was absent from the entire adversarial portion of the trial, I would reverse defendant's conviction based on the trial court's refusal to grant a mistrial.
For these reasons, I respectfully dissent.