580 So.2d 953 (1991)
Ashraf SIGARI
v.
LOUISIANA HEALTH SERVICE & INDEMNITY CO. and Blue Cross/Blue Shield of Louisiana.
No. 91-CA-8.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1991.
Joseph Tynam, New Orleans, Jerome Friedman, Jerome Friedman, PLC, Metairie, for plaintiff-appellee.
Thomas A. Rayer, Denechaud and Denechaud, New Orleans, for defendant-appellant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
KLIEBERT, Judge.
Plaintiff-appellee, Ashraf Sigari, sued her insurer, defendant-appellant, Blue Cross/Blue Shield, for failure to pay, pursuant to a health insurance policy issued to her, medical expenses of $11,132.00 incurred for hospitalization and surgery of a ruptured intervertebral disc. The trial court found (1) the injury was covered under the policy, (2) the insurer failed to timely pay the claim, and (3) awarded penalties (double the claim) and attorney's fees of $4,500.00 to plaintiff. Defendant appeals. The plaintiff neither answered nor cross appealed. We affirm.
The issues on appeal are whether the trial court erred in finding plaintiff's statements on the application for insurance made on September 30, 1986 were false and were made with the intent to deceive the insurer; and, secondly, whether plaintiff's right to penalties and attorney's fees was proven under LSA-R.S. 22:657.
LSA-R.S. 22:619 is applicable to the case at bar and provides:

*954 "§ 619. Warranties and misrepresentations in negotiation; applications
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."
Amended by Acts 1985, No. 506 § 1.
In a denial of coverage under Section 619, the jurisprudence of this state has held the insurer to a three-tiered burden of proof. First, it must be shown that the applicant's statements were false. Second, the insurer must establish that the misrepresentations were made with an actual intent to deceive. Third, the insurer must establish that these misstatements materially affected the risk assumed by the insurer. Jones v. United Sav. Life Ins. Co., 486 So.2d 1110 (2nd Cir.1986); see also Johnson v. Occidental Life Ins. of Cal., 368 So.2d 1032 (La.1979).
The basic facts are not in dispute.
Plaintiff is from Iran. She first came to the United States in 1979 and lived in Jackson, Mississippi. She did not speak English. Her husband had lived here for some time prior thereto when plaintiff came to join him.
Plaintiff was first seen by Dr. A. Albert Azordegan in Jackson on November 8, 1979 complaining of bilateral pain over the lumbosacral joint. A myelogram was performed and found to be normal. Although she was seen several more times, Dr. Azordegan found the "majority of her problem was on a psychological basis."
Plaintiff moved to New Orleans and was referred to Dr. John Jackson in December of 1980. Dr. Jackson saw plaintiff on January 8, 1981 and found a "basically normal neurological exam." X-rays of the spine were also normal "but there was a questionable narrowing of the C4-5 disc space." However, Dr. Jackson felt the majority of her complaints were on a psychological basis and referred her to a psychiatrist, Dr. Glenn Ruffin.
Plaintiff saw Dr. Ruffin for depression associated with her being alone in a new country where she did not understand the language. Her sessions with Dr. Ruffin relieved any back pain she experienced. After 1982 or 1983, the only back pain she experienced was associated with her monthly menstrual cycle. She did not see a doctor again for her back until sometime in 1985.
Plaintiff's husband suffered a heart attack in March of 1985. Because of this plaintiff was forced to help manage the two restaurants they owned as well as maintain the cooking and cleaning in the couple's four bedroom home until Mr. Sigari recovered from open heart surgery. Plaintiff then became depressed and, because of back discomfort, she saw Dr. Eugene Dabezies in 1985. He found no problems. Plaintiff did not return for treatment until after she sustained a fall in January 1987.
On September 30, 1986, plaintiff applied for individual health insurance coverage with defendant through its agent, Norman Hingle, Jr. Because plaintiff did not sufficiently speak or understand English, her husband met with Mr. Hingle and answered the questions on the insurance application. Mr. Sigari answered "no" to each question concerning "medical conditions" of his wife. In particular, he answered "no" to whether his wife ever had any of the following conditions:
* * * * * *

*955 "(b) Arthritis, rheumatism, any bodily deformity or sciatica
* * * * * *
(p) Muscular disease, back disorder or any other orthopedic problems
* * * * * *
(v) Any other medical or surgical advice or treatment or departure from good health within last 10 years."
* * * * * *
With regard to Item "p" Mr. Sigari testified he asked Mr. Hingle how far back to go and that Mr. Hingle replied three years. Mr. Hingle testified that he could not remember if Mr. Sigari asked him how far back to go but that if he did, his normal reply would have been to birth. Near the time the application was completed, plaintiff entered the room and Mr. Sigari explained the application and how it was completed to her in her native language. Plaintiff then signed the application and a policy issued effective October 15, 1986.
In January 1987, while mopping and waxing the kitchen floor, plaintiff hurried to answer the telephone, slipped on the floor and injured her back. She was diagnosed as having a herniated lumbar disc and surgery was scheduled in June 1987, after plaintiff's mother arrived from Iran. While in the hospital, on medication, a history was taken from plaintiff which indicates she had a seven year history of low back pain and a two year history of sciatica, right leg. However, plaintiff testified the history was taken from her with no translator. She suggests the language barrier caused an inaccurate history and that she had only suffered sciatica after the January 1987 fall, not for two years.
Based solely on the history given at the hospital, defendant refused to pay the claim. In denying the claim, no further investigation of plaintiff's condition was made.
The trial court found that because plaintiff's doctors had told her she did not have a back problem, she had no reason to believe she had a back disorder and thus her statements on the application were not false. The court further found that her answer to question "v" was not false because it was consistent with the other twenty-one answers and compatible with her medical history as she understood it. Finally, the trial court concluded that if she would have answered "yes" the accompanying investigation by defendant would have revealed plaintiff did not have a pre-existing back condition. On these findings the court found the injury was covered under the insurance policy issued to plaintiff.
In reviewing the correctness of the trial court's judgment, we are guided by the principles recently set forth by our own Supreme Court in Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989), wherein the Court stated:
"[1-3] It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.... Further observations on appellate review of facts in Louisiana civil cases, 22 La.L.Rev. 605, 611 (1962). The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.... In applying the manifestly erroneousclearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo....

*956 When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong...." (Footnote Omitted) (Citations Omitted)
In our review of the record, we conclude the trial court was not clearly wrong in finding plaintiff did not have a pre-existing back condition. Because defendant did not meet its burden of proof to show the statements were false, the trial court properly refused defendant's attempt to deny coverage under the policy. Accordingly, finding no manifest error in the findings of the trial court, we affirm that portion of the judgment holding plaintiff's injuries are covered under the policy.
Defendant also claims the trial court improperly awarded penalties and attorney's fees pursuant to LSA-R.S. 22:657. The version of Section 657 applicable to this action provides:
"657. Payments of claims; health and accident policies; penalties
A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.
B. All claims for accidental death arising under the terms of health and accident contracts where such contracts insure against accidental death shall be settled by the insurer within sixty days of receipt of due proof of death and should the insurer fail to do so without just cause, then the amount due shall bear interest at the rate of six percent per annum from the date of receipt of due proof of death by the insurer until paid."
The uncontradicted testimony at trial showed plaintiff submitted the claim to defendant to be paid but defendant refused to pay solely on the basis of the history given by plaintiff on the day of surgery. No further investigation was made.
As stated above, the trial court found that, based on all evidence, plaintiff did not have a pre-existing back injury. The trial court concluded that since an investigation by defendant would have revealed no pre-existing back injury and defendant did not conduct an investigation, penalties and attorney's fees were warranted. See Barrilleaux v. Lalonde, et al, 471 So.2d 984 (1st Cir.1985). We find no manifest error in this conclusion. Thus, we affirm the award of penalties and attorney's fees.
Finally, plaintiff's request in brief for additional attorney's fees on appeal cannot be considered where plaintiff did *957 not answer the appeal. LSA-C.C.P. Article 2133; Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (2nd Cir.1987).
For the foregoing reasons, the judgment appealed is affirmed in all respects. Defendant is to bear all costs of this appeal.
AFFIRMED.