**Savitri KADAN**

v.

**COMMERCIAL INSURANCE CO.**

**Civ. A. No. 90–2969.**

United States District Court,
E.D. Louisiana.

Aug. 20, 1992.

Jay J. Szuba, Navratil, Hardy, Bourgeois & Szuba, Baton Rouge, La., for plaintiff.

Frank J. D'Amico, Darla D'Amico, New Orleans, La., for defendant.

### Findings of Fact And Conclusions of Law

MENTZ, District Judge.

Having tried the above-captioned case on its merits without a jury, the Court hereby issues its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such; to the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

## I. *Background*

### A. Facts

On January 25, 1984, Dr. Savitri Kadan procured disability insurance coverage under a "Group Master Policy" that Commercial Insurance Co. of Newark, N.J. ("Commercial") issued to the Professional Insurance Trust for Medical Doctors of Louisiana. Dr. Kadan's eligibility for this policy, which became effective on July 23, 1984, was due to her status as a "member [of the Trust] actively engaged in [her] profession on a full time basis...." The policy, which had a renewal premium due date of January 25th, was renewed on that date in 1985, 1986, 1987, and 1988. In June of 1988, Dr. Kadan suffered an injury that was covered by the policy. She received benefits under the policy until July of 1989, when Commercial discontinued payment upon discovering that Dr. Kadan's license to practice medicine had been suspended on December 21, 1987.

### B. The Contentions of the parties

The policy contains a restriction under the heading "Individual Renewal Conditions" that reads as follows: "We reserve the right to decline to renew the insurance ... [i]f the Insured retires or ceases to be actively engaged in the duties of his occupation, except by reason of disability covered under the terms of this Insurer." Commercial argues that because Dr. Kadan's license to practice medicine was suspended at the time when her policy was renewed in 1988, she was no longer "actively engaged" in her occupation. Thus, Commercial claims that "[b]ecause the policy could not be renewed by her on January 25, 1988, it terminated and was not in effect in June 1988." [1] Commercial cites La.Rev. Stat. 37:1262, 1284, and 1290, which define the practice of medicine and forbid persons without licenses to practice medicine. Dr. Kadan has responded to this contention by asserting that she was "actively engaged" in her occupation in that she violated the terms of her suspension. Toward this end, Dr. Kadan has provided evidence that she continued to practice medicine in violation of the suspension of her license until well after the date for renewal of her policy.

### C. Choice of law

▮ The insurance contract recites that "[t]his policy is delivered in, and is subject to the laws of Alabama." Because the jurisdiction of this Court in this matter is founded upon diversity of citizenship under 28 U.S.C. 1332 (1988), this Court is bound to apply either the substantive law of the state in which it is sitting, *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), or the substantive law indicated by that state's rules governing conflict of laws. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

▮ Louisiana generally gives effect to parties' contractual choices of law. *Del-*

---

**1.** Commercial's Memorandum in Support of Motion for Summary Judgment at 5. In Defendant's Findings of Fact & Conclusions of Law,

Commercial repeats this argument from its motion for summary judgment, which the Court denied, with slight changes in wording.

*homme Indus., Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049 (5th Cir.1982). However, this general rule does not apply where "there are legal or 'strong public policy considerations justifying the refusal to honor the contract as written.'" *ADR v. Graves,* 374 So.2d 699, 700–01 (La.App. 1st Cir.1979).[2] Just such considerations are present here due to the effect of La. R.S. 22:629 (West Supp.1991), which provides that "[no] group health and accident policy insuring a resident of this state, regardless of where made or delivered shall contain any condition, stipulation, or agreement ... [r]equiring it to be construed according to the laws of any other state or country...." *See also Casey v. Prudential Insurance Co.,* 360 So.2d 1386 (La.App. 3d Cir.), *writ denied,* 363 So.2d 536 (La.1978) (declaring a Missouri choice-of-law clause void under § 629). Thus, despite the recitation in the insurance contract, Louisiana law will govern this dispute.

II. *Analysis*

 A. Nonrenewal and "active engagement"

 ■ Dr. Kadan's argument that she was "actively engaged" in her occupation during the relevant time span, even though this was in violation of her suspension from the practice of medicine, requires only brief

treatment. If the only conduct that maintained her eligibility for the policy was conduct forbidden by law, she cannot be permitted to derive contractual benefit from her violation of that law.[3] "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong."[4] *State v. Ray,* 547 So.2d 1350, 1355 (La.App. 3d Cir.1989), *writ denied,* 553 So.2d 470 (La.1989).[5] As the Louisiana Supreme Court has declared, "'no court was ever organized which would knowingly permit a litigant to profit by his own wrong.'" *Plaquemines Parish Comm'n Council v. Delta Devel. Co., Inc.,* 502 So.2d 1034 (La.1987).[6] Thus, this Court can hardly do so in applying Louisiana law.[7] The Court therefore finds that Dr. Kadan's status fell within the nonrenewal provisions of the policy at the relevant time.

 B. Cancellation

 ■ The insurance contract contains no relevant language governing policy cancellation, and only provides for nonrenewal in certain limited circumstances. The only relevant ground for nonrenewal is failure to remain active in the profession. Under Louisiana law, ambiguities in insurance contracts are resolved in favor of the insured. *Trinity Indus. v. Ins. Co. of N. America,* 916 F.2d 267, 269 (5th Cir.1990)

---

**2.** *Accord Davis v. Humble Oil and Refining Co.,* 283 So.2d 783, 794 (La.App. 1st Cir.1973).

**3.** Certain evidence put forward at trial indicated that at the relevant time, Dr. Kadan performed certain community service functions that were medical in nature and that did not require that she be licensed. It is undisputed, however, that she did practice medicine in violation of her suspension during that time as well. Because counsel for plaintiff did not sufficiently distinguish between these two categories of medical services at trial, and because the Court is not inclined to give Dr. Kadan the benefit of any doubt in light of her wrongful conduct in violating the suspension, the Court finds that Dr. Kadan's service activities did not render her "active" within the meaning of the policy.

**4.** *See also Ohio Cas. Ins. Co. v. Todd,* 813 P.2d 508, 518 (Okla.1991) ("No man shall take advantage of his own wrong...."; citing authorities); *People v. Velez,* 124 Misc.2d 612, 477 N.Y.S.2d 78, 79 (N.Y.Sup.Ct.1984) ("'Dolus et

fraus patrocineri debent; Deceit and fraud shall benefit no man.'").

**5.** This principle has been a fixture of Louisiana law since before the turn of the century. *See Schwenck v. Schwenck,* 52 La.Ann. 239, 26 So. 859, 860 (1899) ("'Nul prendra advantage de son tort demesne.' 2 Just.Inst. 713.").

**6.** Quoting *Hyman v. Hibernia Bank & Trust Co.,* 139 La. 411, 71 So. 598, 606 (1916).

**7.** This principle can only be overcome by the most compelling of interests. *See, e.g., Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board,* — U.S. —, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (invalidating on First Amendment grounds New York's "Son of Sam" law, which placed in escrow income earned by accused and convicted criminals' literary works describing their crimes). The defendants have presented no such interest for the Court's consideration.

(citations omitted).[8] Therefore, Commercial has only those rights against Dr. Kadan that are either attributable to it under the nonrenewal clause, or accorded to it by law.

The terms of the contract establish that Commercial has the right to refuse to renew the policy, not to terminate it *ab initio*, if Dr. Kadan was not "actively engaged" in practicing medicine on the renewal date. The policy was on a year-to-year basis, and Commerical did renew the policy for 1988 by accepting Dr. Kadan's premiums. Therefore, absent a power to terminate belonging to the insurer, the policy was in effect in June of 1988, when the injury occurred. Commercial cites no legal authority for the proposition that an insurer can exercise its contractual power to refuse renewal in such a way as to defeat a renewal that has already taken place. The terms of the contract give Commercial no power to avoid the obligations of this contract, and if those obligations are otherwise valid, they were in full force and effect at the time of Dr. Kadan's injury. Cancellation of the contract is therefore not an available remedy in this matter.[9]

### C. Rescission

 While Commercial's failure to exercise its right not to renew deprives it of the defense that it has asserted, that failure may be attributed to its ignorance of Dr. Kadan's suspension from the practice of medicine. Assuming *arguendo* that Dr. Kadan was under a duty to reveal the change in her occupational status such that the failure to do so constituted a misrepresentation,[10] Commercial may have a colorable argument for rescission of the insurance contract on the basis of fraud.[11] Consent is essential to the creation of a valid contract, and fraud is a vice of consent that will justify rescission under certain circumstances. *See Benton v. Shelter Mutual Ins. Co.*, 550 So.2d 832, 834–35 (La.App. 2d Cir.1989) (an insurer is entitled to rescission "if the policy holder, either fraudulently or with the intent to deceive the insurer, makes misrepresentations in its application that materially affect the insurer's risk.").[12] Misrepresentations that are ac-

---

**8.** *See also* William Shelby McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, *Insurance Law and Practice* § 282, at 525 (1986) (noting the "customary rule that ambiguities in the policy will be construed against the insurer as the party which drafted it").

**9.** *See* La.Rev.Stat. 22:636.3(A) ("An insurer may cancel any policy of insurance for failure to maintain membership in an organization if membership is a condition precedent to insurance coverage."); *id.,* § 636.3(B) (setting out notice conditions that the insurer must meet before cancellation will be effective). Thus, because the injury took place before the insurer took sufficient steps to cancel the policy under any relevant statutory provision, cancellation is not available to it, and it can only prevail via rescission of the contract.

**10.** Substantial persuasive authority is available on the analogous question whether there is a duty to correct a representation, true when made at the time of application, that becomes untrue before delivery of the policy. *See, e.g., Stipcich v. Metropolitan Life Ins. Co.,* 277 U.S. 311, 315–16, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928); *Mayes v. Massachusetts Mutual Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980); *United Savings Life Ins. Co. v. Coulson,* 560 S.W.2d 211, 215 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *State Farm Life Ins. Co. v. Lawless,* 586 S.W.2d 468, 470 (Tenn.App.1979); *MacKensie v.*

*Prudential Ins. Co. of America,* 411 F.2d 781 (6th Cir.1969) (applying Kentucky law); R. Keeton & A. Widiss, *Insurance Law* § 5.8(b) (1988). The precise question suggested by the matter at bar, however, is whether there is a duty to correct a representation, true when made, in an application for an insurance policy, when that representation becomes untrue only after the initial term of the policy has expired and the policy has been renewed.

**11.** Because the question whether such a duty exists in Louisiana appears to be *res nova,* and because the facts proved at trial do not present that question squarely in the matter at bar, the Court elects not to rule upon it. As the remainder of this opinion will show, firmly established principles of Louisiana law entitle Dr. Kadan to a judgment in her favor, notwithstanding any misrepresentation. Therefore, this Court elects to base its opinion upon settled Louisiana law rather than upon its prediction of how a Louisiana court would resolve this *res nova* question. Accordingly, the remainder of this opinion will assume that Dr. Kadan's conduct constituted misrepresentation.

**12.** *Accord Viada v. Blue Cross of Louisiana,* 524 So.2d 101 (La.App. 4th Cir.1988); *Jamshidi v. Shelter Mutual Ins. Co.,* 471 So.2d 1141 (La.App. 3d Cir.1985); *Kieffer v. S. United Life Ins. Co.,* 437 So.2d 919 (La.App. 2d Cir.1983), *writ denied,* 442 So.2d 456 (La.1983).

complished by silence can rise to the level of fraud, and Dr. Kadan's failure to inform Commercial of the suspension of her license to practice medicine can arguably constitute such fraud.[13] Accordingly, it is necessary to consider the Louisiana law of contractual misrepresentations in the insurance context.

#### D. La.Rev.Stat. 22:619

This statute provides in pertinent part that "[t]he falsity of any [statement made in writing by an insured in an application for health and accident insurance] shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or [14] unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." La.Rev.Stat. 22:619(B).[15] The jurisprudence interpreting this statute has developed a three-part test for rescission of the policy for misrepresentation. First, there must be a false representation. For the reasons set out above, the Court assumes the element of misrepresentation. "Second, the insurer must establish that the misrepresentations were made with an actual intent to deceive. Third, the insurer must establish that these misstatements materially affected the risk assumed by the insurer." *Sigari v. Louisiana Health Serv. & Indem. Co.,* 580 So.2d 953, 954 (La.App. 5th Cir.1991). Each of

these two latter elements is addressed below.

#### 1. Intent to deceive

If Commercial is to succeed in its attempt to rescind for misrepresentation, "there must be a [showing] of intent to deceive...." *Darby v. Safeco Ins. Co. of America,* 545 So.2d 1022, 1025–26 (La. 1989).[16] Extensive authority supports the proposition that "[t]he insurer claiming the defense of material misrepresentation in order to avoid coverage bears the burden of proving that the insured misrepresented a material fact and did so with the intent to deceive." *Id.*[17] Such intent " 'must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality.' " *Coleman v. Occidental Life Ins. Co.,* 418 So.2d 645, 646–47 (La. 1982).[18]

The evidence presented at trial did not suffice to discharge Commercial's burden.[19] Furthermore, even if defendant had put on substantial evidence tending to show the requisite intent, Commercial's failure to make additional inquiries of the plaintiff before accepting renewal of the policy in 1988 would have been a formidable obstacle to proving the necessary in-

---

**13.** La.Civ.Code art. 1953 provides that "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."

**14.** While the language of the statute suggests that this word should be disjunctive, the jurisprudence clearly establishes that its meaning is conjunctive. Thus, in order to avoid the contractual obligation to pay, an insurer must prove both materiality and intent to deceive. *See Coleman v. Occidental Life Ins. Co.,* 418 So.2d 645, 646–47 (La.1982) (reversing and rendering judgment for plaintiff where insurer proved materiality but not intent to deceive).

**15.** Under La.Rev.Stat. 22:6, disability insurance falls under the definitional rubric of "health and

accident" insurance. Accordingly, La.Rev.Stat 22:619(B) is the governing subsection of that statute.

**16.** *Accord Cousin v. Page,* 372 So.2d 1231, 1233 (La.1979).

**17.** *Accord Cousin v. Page,* 372 So.2d 1231, 1233 (La.1979); *Johnson v. Occidental Life Ins. Co.,* 368 So.2d 1032 (La.1979) *DiGerolamo v. Liberty Mutual Ins. Co.,* 364 So.2d 939, 941 (La.1978).

**18.** Quoting *Cousin v. Page,* 372 So.2d 1231, 1233 (La.1979).

**19.** Evidence was submitted showing that Dr. Kadan deceived others, principally by practicing in violation of her suspension, but no intent to deceive Commercial by means of active or passive misrepresentations was proved at trial.

tent.[20]

The only meaningful evidence on that subject concerns Dr. Kadan's husband, Dr. Ranjit Kadan, who acted on his wife's behalf in all matters touching upon insurance. On July 14, 1988, Dr. Ranjit Kadan met with Mark Evans, the insurance account representative through whom he had purchased the Commercial policy for his wife. He spoke candidly with Mr. Evans, who was affiliated with Commercial,[21] concerning his wife's condition and her suspension from the practice of medicine. At this time, Commercial was ignorant of the suspension. From this conversation, the Court draws the inference that there was no subjective "guilty knowledge" on the part of Dr. Ranjit Kadan as of that time. Given the absence of any other persuasive evidence on this point, it is of no consequence whether the relevant actor, and thus the relevant state of mind, was that of the husband or the wife; in either event, Commercial failed to establish intent to deceive by a preponderance of the evidence.

### 2. Materiality

"For an insurer to avoid liability on the grounds of misrepresentation in a life insurance application [under La.Rev.Stat. 22:619], it must establish ... that the misstatement materially affected the risk assumed by the insurer." *Swain v. Life Ins. Co. of Louisiana*, 537 So.2d 1297, 1299 (La.App. 2d Cir.1989), *writ denied*, 541 So.2d 895 (La.1989).[22] "The test to determine the materiality of the misrepresentation made in an insurance application is whether knowledge of the true facts would have influenced the insurer in accepting or rejecting the application or in fixing premiums." *Gulf Wide Towing, Inc. v. Assoc. Ins. Mgrs., Inc.*, 563 So.2d 432, 438 (La. App. 1st Cir.1990), *writ denied*, 567 So.2d 107 (La.1990).[23]

However, Commercial's failure to investigate Dr. Kadan's status, or even to inquire about it, before renewing her policy strongly suggests that Commercial did not regard disqualification from medical practice as a material change in an insured's position. Likewise, the absence of a policy provision requiring the insured to inform Commercial of changes in eligibility status raises the same inference. Consequently, Commercial's behavior makes it difficult for Commercial to argue that its risk was affected materially by Dr. Kadan's suspension. No such perception or policy on Commercial's part is reflected in Commercial's behavior or in the contract.

■ Commercial's failure to investigate raises one other issue. "Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La.Civ.Code art. 1954. The Court takes judicial notice pursuant to Fed.R.Evid. 201 that the Louisiana State Board of Medical Examiners will provide, in response to a telephone call or letter from anyone, current information on the status of all physicians licensed in Louisiana.[24] Thus, any misrepresentation on Dr. Kadan's part cannot warrant rescission in light of the ease with which Commercial could have monitored Dr. Kadan's

**20.** *See* R. Keeton & A. Widiss, *Insurance Law* § 5.8(b) (1988) ("it is usually very difficult to prove that the insured intentionally concealed information [of changed circumstances in the pendency of an insurance application] so long as insurers do not submit any additional inquiries to the insured at the close of this interim period.").

**21.** At the time the Commercial policy was issued, Mr. Evans worked for James P. Kirby, who held himself out as Commercial's licensed resident agent. Dr. Kadan contends that this discussion constituted notice to Commercial of her suspension, etc., on the theory that notice to an agent is notice to the principal, and that where there is notice of the correct facts, there

can be no misrepresentation. Assuming *arguendo* that this is correct, the notice came far too late to allow Commercial to exercise its option not to renew. Thus, the conversation with Mr. Evans is relevant only insofar as it sheds light on the Kadans' intent.

**22.** *Accord Martin v. Security Indus. Ins. Co.*, 367 So.2d 420 (La.App. 2d Cir.), *writ denied*, 369 So.2d 1364 (La.1979); *Viada v. Blue Cross*, 524 So.2d 101 (La.App. 4th Cir.1988).

**23.** *Accord Henry v. State Farm Mut. Auto Ins. Co.*, 465 So.2d 276 (La.App. 3d Cir.1985).

**24.** 830 Union Street, Suite 100, New Orleans, LA. 70112–1499; (504) 524–6763.

professional status—*i.e.*, by one telephone call or letter per year.[25] The putative misrepresentation was therefore not material, and the obligation of the insurance contract may not, therefore, be avoided.[26]

### III. *Conclusion*

Dr. Kadan is entitled to recover on the policy according to its terms. Commercial is liable to Dr. Kadan only for the insurance benefits provided for in that policy; in light of the novelty of the legal question presented by this matter, it violated no duty or principle in refusing to pay under the circumstances described herein. Because there was insufficient evidence and authority put forward by the plaintiffs at trial to establish the precise amount of the award to which Dr. Kadan is entitled, however, further proceedings are required and are hereby ordered as specified below.

Accordingly,

IT IS ORDERED that there be judgment in this matter in favor of plaintiff Dr. Savitri Kadan and against defendant Commercial Insurance Co. of Newark, N.J., in an amount and under conditions to be determined by the Court after the proceedings ordered below.

### ORDER OF REFERENCE TO U.S. MAGISTRATE

IT IS ORDERED that this cause be and hereby is REFERRED to United States Magistrate Moore, Magistrate Judge for the Eastern District of Louisiana, to hear and determine the question of the amount of damages due to matters:

(1) The amount paid by Commercial Insurance Co. of Newark, N.J. to Dr. Savitri Kadan prior to the institution of this action;

(2) The amount Commercial would have paid to date under the policy had it not suspended payments, and the interest due on those amounts;

(3) Whether with respect to future payments Dr. Kadan should receive payments according to the policy, or a single lump sum for all payments not yet due under the policy;

(4) The proper amount of such a lump sum, discounted to present value.

The Magistrate Judge is directed to hear this matter and to file a Report including Findings and Recommendations in accordance with 28 U.S.C. § 636 and Fed. R.Civ.P. 53 within thirty (30) days of the date of entry of this Order.

ALLOTTED & REFERRED TO U.S. MAGISTRATE MOORE.

---

**25.** *Cf. Mayes v. Massachusetts Mutual Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980). Moreover, as the Commercial's own proposed findings of fact and conclusions of law indicates, "[t]he Board of Medical Examiners for the State of Louisiana publishes an annual list of license holders, the list of which indicates prima facie proof of who is validly the holder of a license." Defendant's Findings of Fact & Conclusions of Law, 19th proposed finding of fact, at the third unenumerated page.

**26.** Dr. Kadan argues that because medical students, researchers, and other non-licensed employees of the Louisiana State Medical Society were eligible for insurance under the same group policy, albeit with somewhat different terms and policy limits, her failure to possess a valid license at the relevant time was immaterial to Commercial's risk. This argument is largely irrelevant, and to the extent that it is relevant, it is counterproductive to her position. First, the relevant actuarial consideration would not be the failure to maintain a license in itself, but the failure to remain active in the occupation of medicine. Second, because non-licensed persons' terms are different from those of physicians, it would appear that this represents a risk assessment by the insurer. However, the testimony given at trial tended to indicate that the primary reason for this difference is the disparity in income, rather than that in casualty statistics, among the classes of eligible insureds. Consequently, the reasoning set out above remains unaffected by this argument and its implications.