STATE FARM LIFE INSURANCE
COMPANY, Plaintiff-Appellee,

v.

Johnny Edward LAWLESS and West
End Recreation, Inc.,
Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section.

July 3, 1979.

Certiorari Denied by Supreme Court
Sept. 4, 1979.

Ralph H. Noe, Jr., Morristown, for defendants-appellants.

Earnest R. Taylor, Morristown, for plaintiff-appellee.

MATHERNE, Judge.

The plaintiff insurance company sues to rescind a policy of decreasing term life insurance it issued on the life of the defendant, Johnny Edward Lawless, payable on his death to the defendant West End Recreation, Inc. The chancellor, under the facts, held in favor of the plaintiff and entered an order rescinding the policy.

The defendants appeal under the following assignments of error:

ASSIGNMENT OF ERROR NUMBER ONE: The Court erred in finding that State Farm Life Insurance Company is entitled to a rescission of the life insurance policy on the life of Johnny Edward Lawless.

ASSIGNMENT OF ERROR NUMBER TWO: The Court erred in failing to find that State Farm Life Insurance Company was estopped to rely upon the physical condition of John Lawless as a basis for rescission.

ASSIGNMENT OF ERROR NUMBER THREE: The Court erred in finding that the physical condition of Johnny Edward Lawless had materially changed from the date of the insurance policy application to date of insurance policy issuance.

On November 13, 1975, Lawless made application to the plaintiff for a policy of life insurance. No premium was paid at that time and no binding receipt was issued. The application stated that under those conditions the policy would go into effect under the following conditions:

> . . . there shall be no liability under the policy until it is delivered and the first premium thereon is paid while all persons proposed for insurance are living, and then only if the statements and answers contained in all parts of this application are, without material change, true and complete as of the time of payment of such premium in which case such policy shall be deemed to have taken effect on the Policy Date thereof.

Lawless answered questions on the application that he had stomach ulcers in 1969 but had completely recovered. This fact is established as true. He also answered that he had consulted a doctor in the past five years only for the purpose of a physical examination for two other life insurance policies with the plaintiff company. These examinations were stated to have occurred in 1974. All other questions on the application were answered in the negative which answers indicated good health.

Though requested to do so in the application, Lawless failed to disclose that he was seen by Dr. Gene Lynch of Morristown on March 29, 1972, and hospitalized for treatment of vertigo, headache and sinusitis and that he consulted Dr. O. C. Renner of Morristown on October 20, 1975, (23 days before he applied for the life policy) complaining of numbness of the left side of his face.

In order to obtain the policy, Lawless submitted to a physical examination by the insurer's physician, Dr. John H. Kinser of Morristown, on December 23, 1975. Dr. Kinser had previously treated Lawless for sinus infection and had prescribed "injections" therefor. The physical examination by Dr. Kinser and the medical history as revealed to the doctor by Lawless showed no other medical record or physical infirmities other than the surgery for stomach ulcers in 1969, an X-ray preparatory thereto, and the sinus infection.

On February 16, 1976, the policy of life insurance was delivered to Lawless and he paid the first premium. The crux of this lawsuit is that upon the delivery of the policy to Lawless and his payment of the premium he did not advise the insurer of the continued physical trouble he had experienced or of the medical examinations and medical advice he had received between the date of the application and the date of the delivery of the policy and payment of the premium.

On January 15, 1976, Lawless consulted with Dr. Renner complaining of numbness of his lip, teeth, gums and nose on the left side and was advised by that physician to have a brain scan.

On a date prior to January 25, 1976, Lawless consulted with Dr. Shelton Soss of Knoxville, Tennessee with complaints above noted, and was referred by Dr. Soss to Dr. Fred F. Brown, Jr., of Knoxville, Tennessee.

On January 23, 1976, Lawless consulted with Dr. Brown concerning the same complaints. Dr. Brown advised Lawless to enter a hospital for an EMI and a laminagram and arranged for Lawless to enter St. Mary's Hospital in Knoxville on February 3, 1976, for that purpose. Dr. Brown wrote Dr. Soss that, he, Brown, suspected a malignancy but he did not relate this suspicion to Lawless.

On January 27, 1976, Lawless consulted Dr. Frank Turney of Knoxville, Tennessee, concerning the same complaints. Lawless told Dr. Turney of his visit to Dr. Brown, of Dr. Brown's advice and of the hospital appointment. Dr. Turney advised an X-ray study to see if there was a thickening of the bone as result of a previous blow to the head suffered by Lawless. The X-ray was made and it did not reveal a thickening of the bone. Dr. Turney thereupon advised Lawless to follow the advice of Dr. Brown, enter the hospital and have the diagnostic tests.

Lawless did not keep his appointment with Dr. Brown and the hospital. In August 1976, it was determined that Lawless was suffering from brain cancer which condition was diagnosed as terminal. Lawless died on January 19, 1979. An Order was entered reviving this lawsuit in the name of the administrator of his estate.

█ █ It is established in Tennessee that a representation made in an application for insurance is a continuing affirmation of the truthfulness of such representations until the policy is delivered. *Independent Life Ins. Co. v. Russell* (1934) 18 Tenn.App. 622, 80 S.W.2d 846. It is also the rule that an applicant for a life policy must use due diligence to communicate to the insurer facts materially affecting the risk which arise after his application has been made and before the contract is consummated by delivery of the policy. *Harris v. Insurance Co.* (1914) 130 Tenn. 325, 170 S.W. 474. See also 7 Couch on Insurance 2d, Sections 35:97 and 35:98; 43 Am.Jur.2d *Insurance* § 794 (1969); cases annotated at 148 ALR 461.

█ The chancellor found that Lawless had cancer when the application was signed, and there is material evidence to support that finding. The defendants claim that cancer was present at the time of the application and at the time of the delivery of the policy and there was no change in the physical condition of Lawless which increased the risk undertaken by the insurer. The defendant also argues that Lawless did not know he had cancer until August 1976. Under the issue before the Court it matters not whether Lawless had cancer at the time of the application or whether he knew of that condition at the time of the application or at the time the policy was delivered. Under the provisions of the application and the rule of law heretofore stated, Lawless owed the duty to advise the insurer of all physical examinations, consultations and prescribed treatments which he experienced during the time between the policy application and the delivery of the policy. The insurer was entitled to these facts so that it could further investigate the condition of Lawless's health prior to delivery of the policy.

The defendants claim the insurer is estopped to seek rescission of the policy. The insurer's physician, Dr. John H. Kinser, had treated Lawless for a sinus infection prior to the time he made the physical examination of Lawless for the insurer. The defendants also point out that a retail credit company report to the insurer, dated December 3, 1975, showed that Lawless had consulted his personal physician, Dr. O. C. Renner, about a month prior to December 3, 1975, for a sinus condition. The argument is made that the insurer should have contacted Dr. Renner, and had it done so it would have learned of the visit Lawless made to Dr. Renner on October 20, 1975, complaining of numbness on the left side of his face. The defendants claim that diligent investigation of the information concerning the numbness of the face would have revealed the malignancy of the brain.

█ Where an insurance company has information which, if pursued with reasonable diligence, would lead to a discovery of the true state of facts regarding the health of the insured upon which it seeks to base a rescission of the policy, the courts will raise an estoppel against the claim for rescission. See *Life & Casualty Ins. Co. v. King* (1917) 137 Tenn. 685, 195 S.W. 585.

█ This argument must fail because there is no evidence that sinus infection is a signal of brain cancer. Compare *Lincoln*

*American Life Insurance Co. v. Stephens* (1969) 60 Tenn.App. 221, 445 S.W.2d 910. The insurer through its own medical examiner knew of the sinus trouble and there is no reason shown why it should have gone to Dr. Renner to inquire about a condition of the applicant's health which it already knew.

It results that all assignments of error are overruled, and the judgment of the chancellor is affirmed. The cost in this Court is adjudged against the defendants-appellants for which execution may issue, if necessary.

NEARN and SUMMERS, JJ., concur.